Be seated. I want to welcome you today to the Fourth Circuit Court of Appeals. I look forward to hearing the arguments. In the first case, the forfeiture case involving the ancient coins, Mr. Tompa? Did I pronounce that correctly? Pleased to hear from you, sir. Good to have you here. May it please the Court, the Guild and the Amici ask you to uphold an important Fifth Amendment constitutional principle today, that private property may only be forfeited after the government provides evidence establishing every element of its prima facie case and the private property owner is given a meaningful opportunity for rebuttal. To demonstrate a prima facie case under the Cultural Property Implementation Act or CPIA, the government must prove by a preponderance of the evidence that the object of archaeological interest first is of a type that appears on a designated list, two, that was first discovered within and hence was subject to the Export Control of the UNESCO State Party for which restrictions were granted, three, that the object was illegally removed from the State Party after those import restrictions were imposed. This can be found in 19 U.S.C. 2610 incorporating sections 2601, 2604 and 2606. The relevant trigger for forfeiture is the object's export from the UNESCO State Party, not its import to the United States. This important distinction assures that any import restrictions are entirely prospective and protects the legitimate trade in such artifacts. It also ensures that there's no embargo, which is significant because if this case is as applied as an embargo, it could raise concerns about the jurisdiction of this Court and perhaps it should be in the Court of International Trade. In the last case, at the end of Judge Wilkinson's opinion, he says that in the forfeiture proceeding, the government bears the initial burden of establishing that coins have been listed in accordance with the statute, which is to say they've been listed by type or other appropriate classification in a manner that gives fair notice to the importers. If the governor meets its burden, then the guild must demonstrate that the coins are not subject to forfeiture. So what do you say the government did here that contravenes what the Court said in its last opinion? First, Your Honor, we would argue that that was dicta, that part of the opinion, because it only... You think that opinion was wrong and dicta, don't you? Well, we do believe it's wrong, but here... You think it's wrong and you think it's dicta. Well, we generally think it's wrong, that's correct, but here what's relevant is the forfeiture provisions. The other case was a very narrow analysis of the case based upon Ultra Vira's review and APA. Right, so it didn't involve forfeiture, but the Court did give direction in the prior case, so I guess you're back to what Judge King just asked you. Is it wrong or is it just dicta? Well, we believe it's dicta, and in fact, Judge Blake, in her opinion, the district court, in her opinion... It could be dicta and be right. It could potentially be right, that's correct, Your Honor, but the problem is... The argument is dicta would mean it may not be binding precedent. Correct. It could carry some weight, it could inform us. We may think it's right, but you could argue that it's not controlling. That's correct. But if it's controlling, we can't revisit it. Right. I would say it's not controlling, and in fact, Judge Blake acknowledged that in her summary judgment order. She said with respect to forfeiture, it's not controlling. It's dicta. She didn't think it was controlling either, but she thought it was correct. She did, she did. That is correct. That is correct, but we don't believe it's correct because it reads out important provisions of the statute. That's the nub here. Correct. You disagree with the government on what it is the government has to show. That's correct, Your Honor. As a legal matter, and you think Judge Blake got it wrong. That's correct. And you don't think that what Judge Wilkinson said is right, and it's not controlling. That's correct, and we would think it's... We take both of those separately, the Judge Wilkinson aspect of it. Since that... Did you argue the last case? I did, Your Honor. Okay. I did. And Judge Thacker was on the panel. I don't believe anyone else on this panel was on the panel. But with respect to the other case, we have to keep in mind that... She made a mistake, too, in your view. I might think I was right. Well, that's true. So this is a different context. I think that's what we're arguing here. As the archaeologists would say, context is key. In this particular case, this is a forfeiture action, so constitutional claims come into play, which were not in play in the prior case. The prior case is a very, very narrow review of government action based upon the APA and ultra-virus review. The last constitutional issue is, were you... Did you get due process notice? Well, I think there's more than that. I mean, I think the constitutional issue in this particular case relates to the burden of proof before forfeiture. Is there one constitutional issue or more than one? I think, well, there's more than one in the sense that it relates, first of all, to the government's burden of proof, but then also the burden of proof on rebuttal. And also there's some procedural issues because the way that Judge Blake looked at the case made her limit discovery quite a bit and it also convinced her to strike our answer. Tell us why the burden of proof is a constitutional issue. I mean, Congress and legislatures set burden of proof by statute all the time. That's correct. We're arguing here that Congress did set it, and that's Congress's obligation. That's what Congress did here. But important provisions of that statute were written out of, were basically written out by the court's decision. That's a statutory error, not a constitutional error. Well, I guess it's a constitutional error because by limiting, by taking out elements of the government's case, we believe it changes the, it lessens the government's burden effect, and that impacts the Constitution. What's, what, what? Fifth Amendment. The Fifth Amendment due process clause? Yeah, due process. This is a taking. Okay. This is a taking. It comes back to the due process clause. It does, yes. It's a misinterpretation of the statute or misapplication of the statute that violates the due process clause. That's correct, Your Honor. And we base this upon the plain meaning of the statute because what's missing are a number of elements related to time and place. So the court, the district court held that the only thing the government had to show was that the objects were on the designated list, but we believe they need to show more than that under the statute. They need to show that the object was not only on the designated list, but it was first discovered with it and subject to the export control of a particular country for which restrictions were given. And also they have to show. Found in China, in other words. Right. Or Cyprus by, they could do that by, by, by expert testimony, quite frankly. And then the other issue that. How did the expert, some expert be able to figure out. Well, they do. One of these points was found in China somewhere. Well, they do. So in forfeiture cases, Your Honor, we cited a number of forfeiture cases where expert testimony was used. Remember what they go back to, B.C., right? They do, Your Honor. They do. They do. So there's a whole line of forfeiture cases cited in our brief where expert testimony was used by both parties. And the government has often been required to use expert testimony to establish origin. In fact, they've done it. There's not too many CPIA cases, but there are other cultural property forfeiture cases. And there's two CPIA forfeiture cases. That first step doesn't rise to constitutional dimensions. No, it doesn't. But it's a way that. That kind of thing for user discretion. That's true. But I think it's related to what the government's burden is. And you're correct that the expert issue is generally. It's a civil case. So it's hard for me to see that a burden of proof issue becomes a constitutional issue. I mean, if you're dealing with due process, it seems like your claim would be that we didn't get proper notice of what was going to be forfeited. Because you've certainly got proper notice in the statute of what it is the party claiming the property at the forfeiture proceeding is supposed to prove. And it gives you a list of certificate. And there's a 10-year rule and some other things, which somewhat would seem to me the Congress having set that specific procedure out as what the party seeking the property is to prove, negates your argument that the government's supposed to prove that these We would disagree, Your Honor, because I think that's taking one part of the statute in isolation. And you're looking at 2606. And so you have to look at the process of forfeiture. So an item comes in. Customs has great authority to detain items for further investigation. None was really done here other than to see that it was on the designated list. Then before they seize, they give the importer the opportunity to do what you're suggesting, which is show a certificate. Well, it's not you suggesting. Well, it's the statute. 2606, yes. But you have to look at the whole line. You can't take one part of the statute and look at it in isolation. You have to look at the whole statute. So going back, if I may, in terms of where the statute goes. So it starts off with 2601, which sets forth the parameters of what can be restricted. And that's the first discovery, but then subject to the export control. You move over to the provisions that we talked about in the last case, about the power of the president to make the other findings that are necessary. Then you move to detention, 2606, what you can show to avoid seizure of your property. 2609 is the seizure part. And then we talk. Then after that, you get into 2610, which is the burden of proof in the forfeiture action. And that's where we think the problem lies, Your Honor. And what we ask, actually, is quite consistent with what Mr. Feldman, the State Department's top lawyer, said the burden of proof would be in a forfeiture action when the statute was being discussed. So it's consistent with that. It's actually even consistent with what the government said the burden of proof was. There was some deference to that. The district court didn't think so. The district court ignored that, Your Honor. The district court ignored that? It did, yes, Your Honor. She ignored both Mr. Feldman's statement and then also a admission of the government. Because in the prior case, they indicated what the forfeiture action would happen in that. And we believe that it's consistent with what we're suggesting here. Why do you say she ignored it?  I guess that's possible, Your Honor. But it's not, you know, it's not in the record anywhere. She didn't mention it. Well, if she agreed with Judge Wilkinson on the part that Judge Agee was talking about, that would eliminate some of your issues, wouldn't it? Well, but she did. So she agreed with him, but she realized that the opinion was, as to the forfeiture action, was dicta. And we believe that she left out important parts of the statute because 2610 really relates back to 2604. And 2604 is what requires the objects only to be covered by the agreement. So they have to be first discovered within and subject to the export control of a particular country. That's consistent with the UNESCO Convention. It's consistent with the national laws of Cyprus and China. Countries do not seek jurisdiction over things not found within their property, within their territory, rather. And then, in addition, there's a timing issue. Because the key is the date of export from the State Party, not import into the United States. And so there's no evidence on that either. Just assume for argument that the court believes that the prior opinion was correct on burden of proof. Where does that leave your case now? What happens? Well, I think, given the, so because there's constitutional claims at issue, because of the court's decision in the Trump travel ban cases, as well as the Zivotofsky v. Clinton and Zivotofsky v. Kerry cases, you have to look at this anew. You can't just base it upon a very narrow reading of the statute based upon ultra-virus review because there's constitutional claims. Right. Well, let's assume that we do all that and we conclude the court's prior direction was correct. What happens in your case at that point? Well, then we would have to be able to rebut that, okay? Rebut the presumption that the government made in its prima facie case, and that was not addressed. And what happened in the proceeding below? I mean. The court wouldn't allow. So we put up expert testimony, but the court wouldn't allow it and said it wasn't particularized enough. So that's a new, essentially a new rub on the law, which didn't exist before. And we'd review that for abuse of discretion. I think that's. Ruling on the admissibility of the expert testimony. Well, no, I think that goes, again, to whether or not we could rebut it. So I think there's constitutional issues there as well, because it's whether or not we can rebut the case. The evidence issue becomes constitutional? We believe so, Your Honor. Assuming that Judge Wilkinson, that we agree with what he said. Right. That's the predicate for what. Well, I think the key is that was a different. What we're arguing, that was a different context. You have to look at it much more carefully here because of the constitutional. We agree with Judge Wilkinson, or we think that what Judge Wilkinson did was controlling. What's that do to your evidence issue? I think it does. It's a whole new issue because Judge Wilkinson didn't address that in his opinion. In fact, what Judge Wilkinson said. What's our standard of review on it? Your standard of review, I think, is a constitutional review because it relates to the rebuttal. It's de novo. De novo, yeah. Okay. I see my time is almost up. If anyone has any other questions. Thank you very much. You've saved some time, too. Ms. Farber. Opposing counsel says we have to start over on the burden of proof issue. What do you say? I do not think that you have to start over on the burden of proof issue, Your Honors. May it please the court. This is not a case about coins or property rights. It's not a case about coins that the guild wants. This is a case about regulations that the guild doesn't want. This court does not need to revisit its previous 2012 decision. And the district court's decision in this case should be affirmed. And it should be affirmed for two main reasons. First, the district court correctly applied the CPIA's burden shifting structure to the guild. Now, what's the impact of our previous decision? Is it dicta or is it controlling? Your Honor, I believe there are parts that are controlling. And as the district court recognized, there are some parts that are dicta. But, for example . . . So you agree that some of it is dicta? I would agree that some of it is dicta, as the district court noted. However, the Fourth Circuit noted in 2012 that the coins were listed. They were designated pursuant to 2604. That holding is binding. That's not dicta. The Fourth Circuit also held in 2012 . . . That's part of the law of the case, then, in your view. Yes, Your Honor. Additionally, the Fourth Circuit held . . . It's more than precedent, then. It is law of the case. This is really the same case, that part. That's correct, Your Honor. That's correct. And it would be binding precedent. And, in addition, the court held in 2012 that the detention of the coins was lawful under 2606. So, I would even argue that the court in 2012 found that the Prima Facie case had been met already, because the coins were detained pursuant to 2606. But, we don't even need to go that far, because . . . And the district court didn't even really go that far. The district court found that the government met its burden of proof pursuant to the text of the statute and cases in other circuits that have examined the burden-shifting structure under the CPIA. So, under those cases, and the two cases that we have under the CPIA, our original manuscript, which was out of SDNY, and Peruvian oil, which was out of EDNY. Both of those cases arose under the CPA. Both of them examined the burden-shifting structure under the statute. And what both of them found was that for the government's Prima Facie case, the initial burden is on the government to show that the CPIA applies. That's pursuant to 2610. An original manuscript tells us that it's a probable cause standard for that aspect of the Prima Facie case, which is just a level above mere suspicion. Peruvian oil was the CPIA case that examined a forfeiture under Section 2606, which is what we have here. Original manuscript was under 2607, which relates to stolen goods. And what Peruvian oil found in determining that the government did meet its Prima Facie case, it considered whether the items were designated material and whether they were exported from a state that's a party to the UNESCO Convention and had a bilateral agreement with the United States. When you look at Peruvian oil, there is no mention of a requirement that the government show the date of export from Peru. The date of export from Peru is not even mentioned in the Peruvian oil case. Nobody appears to know it, and it's not relevant to the government's Prima Facie case there. And in addition, there's no export control standard that's part of the government's Prima Facie case in Peruvian oil. What's sufficient there is that Peru is a party to the UNESCO Convention and that Peru and the United States developed a memorandum of understanding that related to the important export of the materials that were subject to designation. So in this case, the district court applied that standard and found that essentially all of the elements had been conceded away by the guild because the guild wanted to bring this case to pursue a numismatic fantasy of bringing down the CPIA's regulations on ancient coins. So the guild conceded that the coins at issue appeared on the designated list of items for Cyprus and China. The guild conceded that the SPINC invoice, which listed the coins as being provided descriptions of the coins that fell under the regulations, that that invoice was accurate. That's who they bought the coins from? Yes, in short, yes. SPINC was the consignee in England that shipped the coins. Somebody in the UK? Correct, correct. And there's a bit of color there as far as some of the coins were given to SPINC from a dealer in Canada and the guild didn't really buy them, they were sort of donated, but that's not relevant to the court's consideration here. I think that in short, yes, the guild bought the coins from SPINC and SPINC exported them to the United States. And the guild conceded that that SPINC invoice was accurate and additionally the guild conceded that it had no certification from a state party to show that the export was legal under 2606. Now pursuant to original manuscript in Peruvian oil, that's our prima facie case. That's it right there, we've met it. And the guild conceded those elements because what they want to litigate is the underlying validity of the CPA. Your view is they've conceded your prima facie case. Exactly. And their view is that we have these additional elements to the prima facie case and there's no support for that in the case law, there's no support for that in the statute. Judge, as you noted, the statute itself, 2606B, provides for material that the importers are supposed to provide in the event that the date of export from the state party is not known. So if you look at the statute, if you look at 2606B, there are several parts in that statute where the statute provides, if the date is not known, if the date of export is not known, then the importer must provide a statement from the consignee or what have you. So the statute explicitly provides for scenarios where the date isn't known and in those scenarios, as the district court observed, as this court has observed, the burden is on the importer to show the date of export from the state party. That's not a part of the government's prima facie case. You don't see it in either of the CPIA cases that we have. It's not there in original manuscripts. It's not there in Peruvian oil. And the district court correctly concluded that it's not here in this case. Additionally, there is no requirement to show export control. That's the other aspect of this burden of proof that the guild claims was misapplied. But there's no support for that in the case law, that there's an affirmative part of the government's prima facie case where the government has to show that material is subject to export control. The government cited to two alleged judicial admissions that the guild believes were ignored. One of those alleged judicial admissions is in the joint appendix at 1097. I'd posit that if the court takes a look at both of the alleged judicial admissions in this case. Remind us what those are now. Sure. So the first one is a statement from a State Department attorney in a proceeding from I believe 1976, it might be 1970, regarding what the burden of proof might be in a forfeiture case that would eventually arise. Is that the Feldman statement? Correct. Yes, Your Honor, that's the Feldman statement. And the part that the guild wants to draw the court's attention to is that the State Department says that the government would have to show affirmatively when the coins left the country. But if you look just a bit further down on the same page, which is JA 1097, which I'm sure the district court did, there's a statement that completely undermines and contradicts that alleged admission. Oh, we know that the court looked down that page like you just said. I assume that Judge Blake is a very thorough reader. He's talking about, you're saying omissions, not admissions. They're omissions, right? Yes, Your Honor, sure. And I think that's correct, and I think that what's important to note about the Feldman statement that Did he have authority to bind the State Department or the United States government? No, he certainly did not. So what would be the significance of what he was saying back in the 1970s anyway? I agree with you that it's not significant, and I would point out that he also acknowledges that Congress might decide that a different requirement was necessary in order to prevent looting. He says that on the same page. And the version of the bill being considered at that point in time Is that part of the legislative history? I don't believe it is, Your Honor. I believe this was from a panel discussing the law. What do you say it is, irrelevant? Irrelevant. It relates to a The court was entitled to ignore it. Yes, Your Honor. And what about the other one? The other one, Your Honor, it's pulled somewhat out of context. It relates to a discussion about the general burden of proof and not whose burden it is to show export in a situation where you don't know the date of export. Who is doing the Remind, what's the context of this? The context is whether the government ever said that the statute would require the government to affirmatively prove the date of export. Okay, so who's doing the talking here? In the second alleged judicial admission, I believe it's one of the government attorneys who predated me. It might have been Mr. Adams, although I'm not 100% sure. And he made this statement where? He made the statement in a motions hearing. In this case? In the previous iteration of this case, exactly. What did he say? The gist, I can't recall. I don't have the exact transcript in front of me, unfortunately. But the gist of the discussion. Is it in the record? It is in the record, Your Honor. I believe it's at JA 398, give or take a page. Just give us the gist of it. The gist of it is that the discussion was about the meaning of first discovery, whether there is a first discovery requirement. And the statement that the government made was following a judicial statement where the judge sort of took, removed from consideration cases such as this where the date of export is not known. So the judge said, we all disagree about whose burden it is to show date of export where the date of export is not known. And that's an issue that the court eventually decided in 2011, that this court decided in 2012, that the district court again decided in 2017, that in a situation where you don't have a known date of export, the statute explicitly places the burden on the importer to show the date of export. And that's consistent with the statutory purpose of the CPIA, which is to prevent the importation of looted goods. As the district court observed, looted goods are very unlikely to come with documentation as to their date of export. And if you require the government, if you put that burden on the government to show date of export, you're allowing looted goods into the United States, which is contrary to the purpose of the statute. And then the statutory text itself also delegates that burden when the date of export is unknown to the importer. So all this to say, your honors, the district court correctly applied the burden shifting framework that's been set out by the CPA and interpreted by original manuscript and Peruvian oil. And its decision should be affirmed on those grounds. The guild failed to rebut the government's initial burden with any admissible evidence. And therefore, summary judgment was correctly awarded to the government on that issue. As the court has noted, the district court's determination as to the admissibility of evidence, as to the admissibility of expert opinions, that is subject to review for abuse of discretion. And in light of this court's 2012 opinion, the district court did not make a clear error in preventing that expert testimony. The opposing counsel says it's de novo review because it creates some type of constitutional problem here as opposed to a garden variety exclusion of an expert. So what's your response to that line? I haven't seen any support in the cases for that assertion. Courts have considered over and over again the admissibility of expert testimony. And every time that question has come up for appellate review, the same standard has been applied, and that is abuse of discretion. And so I would point the court to that well-established line of cases holding that such a decision is subject to abuse of discretion review. And in this case, it's worth noting that the expert opinions that the guild offered, all of those expert opinions would force the district court to re-litigate the validity of the designated list in this case. There's no way to hear that evidence. Would they take an issue with what came out in the 2012 opinion? I'm sorry? Take an issue with our 2012 opinion? The expert opinions? Yes. The expert opinions, I don't know that they directly challenged the 2012 opinion. What they did challenge was the placement of the coins on the designated list. The expert opinions, both in different ways, essentially said these coins should never have been placed on the designated list in the first place. And this court's 2012 opinion essentially foreclosed challenge to the validity of the list. And so the district court correctly held that the proposed expert testimony would have run afoul of that decision, and it would have run afoul of the statutory text. Is it your position Judge Blake got it right in every respect? I think Judge Blake wrote a perfect opinion, Your Honors. However, you don't need to believe that it's right in every respect. I'm asking you the government's position. You're talking about what my position is. But I'm asking you if that's the government's position. You're satisfied you don't have to take issue with any things you did? Is there a specific aspect of that? No. Could we just say affirm our own opinion of the district court and you'd be satisfied? We would be fully satisfied with an affirmation from this court. Did she hit it on the head? Yes, Your Honor. All right. Yes, we do believe she hit it on the head. And I will just make a final point about the political question issues or the need for the court to revisit its old decisions. As this court has noted, the decision of another panel is binding. And in this case, there's no need to go back and revisit the same questions. It's more binding here because it's in this case you said earlier. Yes. Maybe we could arguably have more authority when it's in this same case maybe than if it's in a prior case. But it's a prior decision of this court, which normally can't be undermined by another panel. It would have to go in bank. That's exactly right. To fix it if it's wrong. Yes, that's exactly right, Your Honors. And the cases that the guild cited in support of its argument that this court should revisit some of its underlying validity conclusions really are not applicable in this case. The Trump line of cases dealt with standing and ripeness, which are not at issue here. And the Zivotofsky case explicitly says that courts should refrain from making a decision on a foreign policy issue where that decision would require the court to supplant its own policy view for that of the legislature, which is exactly what the guild wants this court and wanted the district court to do in this case. It's to plant the legislature view of how these cases should proceed in forfeiture with the guild's own view. This court should decline that invitation and affirm the decision of the district court. Now somebody said this was a test case that's in here somewhere. Yes. Does that make any difference? It does not make a difference as far as the guild standing to bring this case. It might shed some light on why the guild was not able to meet what is really a relatively light burden to show that to the best of a consignee's belief, these items left the state party outside of the regulated period. The guild really had to go, really had to work hard not to establish that evidence. It's relevant just to show that these restrictions are not actually all that burdensome. The guild had to work pretty hard in order not to meet their burden. You started out with like 22 or 23 coins. Yes, Your Honor. How many were there? Which one of those is right? Yes, the guild shipped, they say that they shipped 23. Customs received 22. There are 22 in the vault and it's a mystery where that last one is. There's a mystery coin. There is a mystery coin. Now it's down to 15. Correct. You all gave up on seven of them? Yes, Your Honor. What happened to those seven? Those seven were actually not subject to the regulations. They were much newer coins that didn't fall within the regulations. Have you given those back? We did give them back. We gave them back in the morning of the day that Judge Blake's summary judgment opinion issued. So I anticipate that we'll be going back down to litigate a mootness question as to attorney's fees and costs whenever this resolves. Because those coins were returned before. Or, well, we don't know the exact timing of it, but the coins were returned on the same day as the summary judgment opinion. So do you know, or maybe opposing counsel would know, that the expert witnesses, did they actually look at the coins? I see my time is up, but if I may answer your question. Answer all the questions you get. Yes, Your Honor, my pleasure. My understanding is that at least since the coins were seized by customs, that the guild's experts did not look at them, that I could be mistaken in that. The parties did hire an object conservator to take photos of the coins, and those, I believe, are in the joint appendix. And it's my understanding that the experts for the guild did look at those photos. But I'll let Mr. Tompa speak to that. All right, thank you. Thank you. Thank you very much. Your Honor, just a few points. First of all, with regard to the law of the case, we believe that does not apply because this is actually a different case. It's a totally different forfeiture case. It's not remand. Also, if you look at the ---- You might be better off if it was law of the case, because then the panel could change its mind. But then if it's not law of the case and it's present, you've got to go in bank to fix it. Well, again, in our ---- If it's wrong. Right. In our view, it's not controlling here, as I said. It's not controlling in any way you turn it. And if we have to go in bank, you want us to do that, I guess. Sure. We'd love it. With respect to the issue of the government admissions, I think Ms. Farber just mentioned one, mentioned two of them, but there's a third one which is probably more significant, which is ---- You say there are three omissions. Admissions. Admissions. Government admissions. Government admissions. So the third one is actually in a pleading that the government filed in the prior action. It's at 1215 to 1217, and the Court could read it. Pleading in another case? No, a pleading in the prior action. The prior case. Prior case, yes. Which is a different case. Which is a different case. Correct, Your Honor. Correct. Well, I mean, in just ten seconds, what does it say? What does it say? I mean, we believe it follows our views on what the burden of proof is, that you have to look. The government has a burden. They have to establish it initially by expert testimony, and then the claimant can rebut by preponderance of the evidence. And the problem here is that the district court added an additional standard to the general preponderance of the evidence standard, so she said it had to be particularized evidence. And we argue that that standard doesn't apply because you're changing what the rule is. And if you look at the Langbord case, which he cites, that discusses about you could use generalized testimony as an expert and combine that with additional information to allow the finder of fact to determine whether or not the preponderance standard was met. So in this particular case, with respect to Mr. Mudd, it wasn't just the fact that coins circulated. It was also there was a large number of Cypriot and Chinese coins outside of Cyprus and China as of the date of the restrictions. There was the issue that the Chinese coins, there was a very short time frame between when the import restrictions came into effect and when the coins were imported. So there wasn't a long time frame. It was like a couple months for the Chinese coins, a couple years for the Cypriot coins. There was testimony in the record that the Cypriot coins were sitting in boxes in Spink for some time beforehand. Unfortunately, the person who sold the coins to the gill was involved in a very serious accident. So he couldn't testify, but they put on a 30B6 witness for Spink who stated his belief on that point. There was the fact that the government acknowledged that these coins were not the product of looting. So all these factors should have been considered with respect to Mudd's testimony. It wasn't proper for the court just to say that, oh, it's not particular enough because we believe it was particularized because it related to the coins on the Spink invoice. And then there was additional factors that should have been considered with respect to Mudd. Now, with respect to McCullough, our argument is quite simple, is that it was particularized because it related to the coins that were on the Spink invoice that were imported from Cyprus. And a predicate for import restrictions or for them to apply is that there has to be an export control in the other country, right? So Cyprus is part of the EU, and even an export from Cyprus to the U.K. So assume in the couple years, less than two years, between when the import restrictions were imposed and when the coins were imported, assume the coins were exported in that short time frame from Cyprus to Britain. That would have been a legal export under EU law, which is binding on Cyprus, and it's in the Cypriot legislation, okay? And then an export from the EU is a legal export to the United States under EU law. And so because there was no improper export, there couldn't have been any improper import. And so that's what we were saying with respect to Mr. Mudd's, Mr. McCullough's testimony. The government keeps on saying that we want to overturn the import regulations. We're not doing that. Neither of the experts suggested that the import regulations would be overturned. In fact, they assumed that they were in effect. Mr. McCullough did that specifically, as a matter of fact. I see my time is up, Your Honors. Thank you very much, sir. We appreciate it. We'll come down and greet counsel and then take up the next case.
judges: Robert B. King, G. Steven Agee, Stephanie D. Thacker